UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WAYNE MARCELLOUS JUNE,

                        Plaintiff,          **DECISION AND ORDER**
                                    **No. 12-CV-6461T**

            v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.[1]
_____

## INTRODUCTION

Wayne Marcellous June ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Michael Friedman was not supported by substantial evidence in the record and was based on erroneous legal standards.

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should, therefore, be substituted for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 45 U.S.C. § 405(g).

applicable legal standards.   Thus, the Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's motion is denied.   Plaintiff's complaint is dismissed with prejudice.

## PROCEDURAL HISTORY

On August 19, 2008, Plaintiff protectively filed an application for SSI benefits, alleging disability since December 1, 1996.   Administrative Transcript ("Tr.") 80-83.   On October 31, 2008, his claim was denied.   Tr. 42-48.   At Plaintiff's request, an administrative hearing was held on April 27, 2010 before ALJ Michael Friedman in Rochester, New York (Tr. 30-41).   Plaintiff, who was represented by attorney Kelly Laga, testified at the hearing.   Tr. 32-40.

On May 11, 2010, the ALJ denied Plaintiff's claim.   Tr. 15-25. He found that Plaintiff had not been under a disability within the meaning of the Social Security Act since the date the application was filed.   Id.

On July 5, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.   Tr. 1-4.   This action followed.

## FACTUAL BACKGROUND

In Plaintiff's application for SSI benefits, he claimed that his disability was due to minor scoliosis and problems with a bone in his left foot.   Tr. 80-83, 93.

A.    **Non-Medical Evidence**

Plaintiff was born on January 15, 1985, and was 23 years old at the time of filing.  Tr. 80.  He graduated from high school and attended one semester of college.  Tr. 34.  Plaintiff last worked as an assembly worker in a factory in 2007.  Tr. 32-33, 95.  This job required him to stand at a machine all day.  Tr. 94.  In 2001, Plaintiff worked as a cleaner and food preparer at a fast food restaurant.  Tr. 95.  This job required him to stand and walk four hours per day, sit two and half hours per day, and lift less than ten pounds.  Tr. 95-96.

At the hearing before the ALJ, Plaintiff testified that he had back pain and left foot pain, and that he had surgery on the small toe of his left foot.  Tr. 33.  He testified that pain medication helped him "a little," because it made it easier for him to move around.  Tr. 34.

Plaintiff testified that he used a computer for one to two hours a day to write and draw.  Tr. 40.  He reported that his hobbies included reading, writing, drawing, surfing the internet, and playing chess and basketball.  Tr. 105.  He also reported that he took care of his son while the child's mother worked.  Tr. 102.  Plaintiff testified that he went for walks outdoors about four or five times a week.  Tr. 39, 104.  He reported that he did not have a driver's license, but that he traveled via car and public transportation.  Tr. 104.

**B.   Medical Evidence**

Visit records from Dr. Robert Molinari summarize much of
Plaintiff's medical history.  Tr. 122-32, 147-69, 173-78, 204.  On
March 18, 2004, Dr. Molinari described Plaintiff as a then-19 year
old physically fit male with a one-year history of back discomfort
and left-sided hip pain.  Tr. 160.  Plaintiff and his mother
reported a life-long deformity that had not previously caused him
trouble.  He remained actively involved in sports.  His diagnosis,
based on examination and previous x-rays, was longstanding grade IV
spondylolisthesis with approximately 45 degrees of segmental
kyphosis and a 20-degree left sided lumbar scoliosis curve.  Tr.
160-62.

On physical examination, Dr. Molinari described Plaintiff as
"very physically fit, very muscular."  Tr. 161.  He had an obvious
step-off in his lumbar spine, and a left-sided scoliosis and mild
left lumbar hump.  He could walk in a normal manner, touch his toes
with his hands, run, jump up and down, and do a pushup with no
pain.  Because Plaintiff was very active, played basketball, worked
out frequently, and had no significant symptoms, Dr. Molinari
recommended physical therapy for spine stabilization.

On November 11, 2004, Dr. Molinari reported that Plaintiff
complained of increased back pain and noted that there were
multiple positive lumbosacral findings.  Tr. 158.  Notes from this
appointment, as well as subsequent reports, however, continued to

-4-

describe Plaintiff as "very physically fit" and "very muscular." Id.

In 2006, Plaintiff continued to report worsening low back and related pain.  Tr. 124-25, 128-29, 166-68.  On July 17, 2006, a CT of Plaintiff's lumbar spine showed marked spondylolisthesis at L5-S1.  Tr. 130-31, 168-69.  An MRI of the lumbar spine showed scoliosis, spondylolisthesis, and mild degenerative disc disease without spinal stenosis.  Tr. 128-29, 166-67.

On January 24, 2008, Dr. Molinari reported that Plaintiff was physically fit and muscular.  Tr. 149-50.  His gait, sensation, and reflexes were normal.  He had full range of motion in his back and full motor strength in all muscle groups.  Plaintiff reported pain but that he could tolerate his symptoms fairly well, and he expressed that he was not interested in surgery.  His diagnosis was stable, high-grade L5/S1 isthmic dysplastic spondylolisthesis ("IDS").  An MRI study at this appointment was consistent with the findings of a previous CT study.

On June 16, 2008, Plaintiff complained of trauma to his cervical spine, but X-rays of that area were unremarkable.  Tr. 125-26.  X-rays of his lumbosacral spine showed no fracture or dislocation.

On January 7, 2009, in a detailed examination report, Dr. Molinari noted that Plaintiff was seen for a routine follow up, and that Plaintiff continued to be uninterested in surgery.  Tr.

147.   Plaintiff reported that his pain was unchanged since his previous visit one year prior.  He reported occasional radiating pain to his lower extremities bilaterally and pain to the lateral aspect of his left foot.  Dr. Molinari referred him to a foot and ankle specialist for evaluation of his left foot.  Physical examination revealed that Plaintiff was in no acute distress and that he could ambulate easily across the examination room.  He could fully flex and extend his lumbar spine, had full motor strength in all muscle groups, and had no sensory deficits.  He was to follow up with Dr. Molinari on an as needed basis only.

On October 24, 2008, Plaintiff was seen by consultative internal medical examiner Dr. Harbinder Toor.  Tr. 133-36. Plaintiff complained of a history of back pain due to an injury from a car accident in 2004.  He described the pain as "constant," "sharp," and "shooting."  Plaintiff indicated that he no longer participated in sports.  He reported that he cared for his child four times a week, showered regularly, dressed himself, watched television, socialized with friends, and liked to read, write, and draw.

Dr. Toor reported that Plaintiff was in no acute distress and that he had a normal gait and stance.  Tr. 134-35. He could squat 50 percent and had some difficulty getting on and off the examination table due to back pain, but he could rise from a chair without difficulty.  Plaintiff had mild scoliosis, his lumbar spine

-6-

flexion was 20 degrees, his extension was 0 degrees, and his lateral flexion and rotation was 30 degrees bilaterally. He had a partially positive straight leg raising test. All other examination findings were negative. Dr. Toor assessed that Plaintiff was moderately limited in standing, walking, and sitting for a long time, and that he was moderately to severely limited in bending or heavy lifting.

In a physical residual functional capacity questionnaire dated March 2, 2009, Dr. Molinari reported that he treated Plaintiff yearly from 2004 through 2009. Tr. 174-78. Dr. Molinari declined to: (1) estimate the amount of time Plaintiff could sit, stand, or walk; (2) estimate the amount of weight Plaintiff could lift or carry; and (3) comment on Plaintiff's ability to perform other work-related activities. He reported, however, that Plaintiff's high grade L5/S1 IDS was stable with conservative treatment and that his prognosis was good. Tr. 174. Although Plaintiff had back pain, exacerbations and radiation to his extremities were occasional only. Id.

On February 10, 2009, Plaintiff was referred by Dr. Molinari to Dr. Adolph Flemister at Strong Memorial Hospital. Tr. 199-200. Plaintiff reported to Dr. Flemister that he had been seen by Dr. Molinari for about two years for left foot pain, which he described as localized laterally in the vicinity of his fifth toe over what appeared to be a bunionette deformity. Plaintiff rated

his pain as "10/10," and stated that it was aggravated by activity and shoe wear.  At that time he had received no treatment for this condition.  Physical examination confirmed that Plaintiff's left fifth toe was significantly shorter than the right fifth toe.  The left fifth toe had significant callousing, was very tender, and had no active motion.  His right fifth toe was normal with a good range of motion and good stability, and both feet had good ankle and hindfoot motion with no instability.  Both feet were pink, warm, and sensate with good motor function.  Hindfoot motion on his left side was somewhat decreased.  X-rays revealed a Y-shaped fourth metatarsal with a small fifth metatarsal projection, and a calceneal cuboid coalition.  Dr. Flemister opined that this condition would best be treated surgically with amputation of the fifth left toe.

In 2009, clinic records indicated that Plaintiff saw Dr. Tiffany Pulcino on an approximately monthly basis.  Tr. 179-87, 192-99, 213.  Plaintiff had overall worsening back pain, and he had been seen several times in the emergency department for back pain secondary to IDS.  He was treated with medication and physical therapy.  Plaintiff continued to remain uninterested in surgery, though he was informed it might relieve or reduce his symptoms.  On August 28, 2009, Dr. Pulcino reported that Plaintiff's pain and functional abilities were improving and that he was able to mow the lawn on his own.

-8-

On December 4, 2009, Dr. Brenda Testini evaluated Plaintiff for foot pain.  Tr. 215-16, 223-24.  Examination of Plaintiff's left foot again revealed a bunion-type protrusion on the lateral aspect with significant callous formation and mild erythema.  There was tenderness to deep palpation, but no warmth or overlying edema.  Dr. Testini reported that Plaintiff had been placed on Gabapentin for his foot pain and that he had been tentatively scheduled for surgery.  Plaintiff was, however, still able to stand and walk two to two and a half hours without significant pain.  Regarding his back pain, Plaintiff reported an increased functional status and that he was continually more active and doing physical therapy exercises.

On January 26, 2010, Dr. Flemister again recommended that Plaintiff undergo surgical excision of the fifth toe and exostectomy of the metatarsal.  Tr. 232.  At the hearing, Plaintiff testified that he had received this surgery.  Tr. 33.

## DISCUSSION

### I.  Jurisdiction and Scope of Review

Title 42 U.S.C., Section 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  Mathews v. Eldridge, 424 U.S. 319, 320 (1976).  When considering such a claim, the section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-CV-2019, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938).  The Court's scope of review is thus limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating Plaintiff's claim.  Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)(finding that a reviewing Court does not try a Social Security benefits case de novo).  The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate.  See generally Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

II.   **The Commissioner's Decision to Deny Benefits is Supported by Substantial Evidence in the Record.**

In his decision denying benefits, the ALJ followed the required five-step analysis established by the Social Security Administration for evaluating disability claims.[2]  Tr. 18-25.  At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 20.

At steps two and three, the ALJ concluded that Plaintiff had the following severe impairments: a history of apparently congenital scoliosis of the lumbosacral spine at L5/S1 and associated conditions, and a severe congenital abnormality of the left foot.  He found, however that none of Plaintiff's severe impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). The ALJ also noted that Plaintiff alleged some worsening of his back condition due to involvement in a motor vehicle accident in

---

[2]    The five-step analysis requires the ALJ to consider the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; (3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No.4, if so, the claimant is presumed disabled; (4) if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work; (5) if the claimant's impairments prevent him or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

-11-

early 2004, but that this was not satisfactorily confirmed by the objective evidence.   Id.

At step four, after an extensive and thorough discussion of the relevant medical evidence, he ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work.[3]  Tr. 20-24.  He also found that Plaintiff could not perform his past relevant work.  At step five, the ALJ found that, given the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (20 C.F.R. 416.969 and 416.969(a)).  Tr. 24.  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. This Court finds that the ALJ's decision is supported by substantial evidence in the record and is based on the appropriate legal standards.

## A.   The ALJ's Residual Functional Capacity Finding is Supported by Substantial Evidence.

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory, and other requirements of work.    20 C.F.R.

---

[3]   **20 C.F.R. 416.967(a): Sedentary work.**  Sedentary work involves, over the course of a typical eight hour work day, the occasional lifting of up to 10 pounds, more frequent lifting and occasional carrying of lighter items, and very limited amounts of standing and/or walking, up to a maximum of two hours in an eight hour workday.

§ 404.1545(a)(3)-(4); see also SSR 96-8p, SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2, 1996).   Here, the ALJ determined that Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 416.967(a) of the regulations.   Tr. 20-24. He noted that Plaintiff's symptoms limited the exertional-type activities he was able to do, but he could carry out all self-care activities and did not testify to any significant cognitive-type side effects from his medications.   Thus, the ALJ concluded that Plaintiff was able to spend his day doing activities consistent with a sedentary job, like sitting most of the day working on a computer, writing, or drawing.   Tr. 21.   In making this determination, the ALJ considered all symptoms and  the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence (based on the requirements of 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p), and he considered opinion evidence in accordance with the requirements of 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  Tr. 20.

Plaintiff contends that the ALJ's RFC determination was improper because he "made no finding relating to Plaintiff's ability to sit," and because "the record contain[ed] no medical opinion of the specific functional limitations that result[ed] from Plaintiff's impairments."   Pl.'s Mem. at 9.   Thus, it is Plaintiff's position that "the ALJ did not engage in reasonable

efforts to develop the record," and that his RFC determination was not supported by substantial evidence.  Id. at 11, 14.

The ALJ may "rely not only on what the record says, but also on what it does not say."  Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citing, inter alia, Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam)).  As the ALJ mentioned, Dr. Molinari and Dr. Pulcino did not provide specific RFC assessments.  Tr. 23.  Because Plaintiff bears the burden of proving his RFC, the ALJ could reasonable rely on the lack of evidence that would preclude a full range of sedentary work.  See 20 C.F.R. § 404.1545(a)(3) (the claimant is responsible for providing the evidence used in the residual functional capacity determination); see also Dumas, 712 F.2d at 1553.

Despite Plaintiff's contention that the ALJ did not have sufficient evidence to make his RFC determination and that he should have further developed the record, the ALJ's extensive discussion of the medical record reveals that substantial evidence existed to support his findings.  For example, Dr. Molinari repeatedly reported that Plaintiff was "very physically fit" and "very muscular."  Tr. 149, 158, 160-61.  In March of 2004, Plaintiff could walk normally, touch his toes with his hands, run, jump up and down, and do pushups with no pain.  Tr. 161.  In July of 2006 and in January of 2008, Dr. Molinari found that Plaintiff

had a full range of motion in his back, and that his gait, motor examination, and sensation were all normal.  Tr. 124, 149.

In October of 2008, Dr. Toor reported that Plaintiff was in no acute distress, that he had a normal gait and stance, and that he could rise from a chair without difficulty.  Tr. 134.  Plaintiff had mild scoliosis, his lumbar spine flexion was 20 degrees, his extension was 0 degrees, and his lateral flexion and rotation was 30 degrees bilaterally.  He had a partially positive straight leg raising test.  All other examination findings were negative.  Id.

This medical evidence, as well as other evidence that was thoroughly discussed by the ALJ, indicated that, despite Plaintiff's back and left foot conditions, he retained significant functional use of his back and legs.  Plaintiff testified at the hearing that he used a computer for one to two hours a day to write and draw, that he took care of his son while the child's mother worked, and that he went for walks outdoors four or five times a week.  Tr. 40, 102.  He also reported that his hobbies included reading, writing, drawing, surfing the internet, and playing chess and basketball.  Tr. 105.  The physical findings, as well as Plaintiff's testimony, demonstrated that Plaintiff's back and left foot conditions did not prevent him from performing the physical requirements of sedentary work.

Where there are no deficiencies in the record (as here), an ALJ is not under an affirmative obligation to develop a claimant's

medical history.   See Perez v. Chater, 77 F.3d 41, 47 (2d Cir.
1996) ("Because a hearing on disability benefits is a non-
adversarial proceeding, the ALJ generally has an affirmative
obligation to develop the administrative record.")(citing
Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755
(2d Cir. 1982)); see also Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.
1996).   Recontacting medical providers is necessary when the ALJ
cannot make a disability determination based on the evidence of
record.   Donmore v. Astrue, No. 07-CV-732S, 2009 U.S. Dist. LEXIS
83586, at *4 (W.D.N.Y. Sept. 14, 2009) (citing 20 C.F.R.
§ 404.1512(e)).   As demonstrated here, however, the record
contained no obvious gaps and the ALJ was able to make a disability
determination based on the available evidence.   For this reason,
this Court finds that the ALJ had no duty to further develop the
record.

Thus, because the ALJ adequately assessed the evidence and
because the record was complete, this Court finds that the ALJ's
RFC determination that Plaintiff could perform the full range of
sedentary work is supported by substantial evidence.

**B.**   **The ALJ Applied the Appropriate Legal Standards Regarding
Plaintiff's Credibility and his Assessment is Supported
by the Record.**

Plaintiff argues that the ALJ failed to apply the appropriate
legal standards for assessing his credibility.   When assessing a
claimant's credibility, an ALJ may not simply state in a conclusory

manner that he finds the claimant to be not credible. Rather, the ALJ's decision must contain specific reasons for his finding that are supported by evidence in the record. See SSR 96-7p, 1996 WL 374186, *4 (S.S.A.). The decision must explain to the individual and a reviewing court the weight given to the testimony and the reasons for the determination. See id.

The ALJ found that

> "[Plaintiff]'s subjective statements concerning the intensity, persistence, and limiting effects of his impairments and symptoms are not supported by objective evidence and [are] not credible to the extent of establishing total disability; he would have obvious marked limitations as to such activities as prolonged or continuous standing and walking, and heavy lifting and carrying, but the evidence, as well as his testimony, is consistent with an RFC for sedentary work."

Tr. 21. Despite Plaintiff's contention that the ALJ's analysis was "fatally flawed," the ALJ's decision contained specific reasons supported by the evidence for discounting Plaintiff's credibility, and he correctly evaluated Plaintiff's statements in making his RFC determination. Tr. 21-24; see also SSR 96-3p and 96-7p.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical

-17-

evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see SSR 96-7p. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Secretary, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995).

Although Plaintiff alleged that he injured his back in a car accident in 2004, the ALJ noted that his medical records from 2004 revealed only a congenital spine deformity, but no spine injury. Tr. 22, 133, 161. The ALJ also noted that although Plaintiff complained of a cervical spine injury in June of 2008, x-rays of that area were unremarkable. Tr. 22, 125. Furthermore, the ALJ pointed out that Dr. Molinari reported that Plaintiff's symptoms were managed conservatively (Tr. 22, 147), and that Dr. Pulcino

reported that plaintiff's pain and functional abilities were improving and that he could mow the lawn. Tr. 37-38.

Plaintiff's alleged symptoms and his claim that he was totally disabled were also inconsistent with his activities and lifestyle. Plaintiff testified that he used a computer for one to two hours a day to write and draw, that he took care of his son while the child's mother worked, and that he went for walks outside four or five times a week. Tr. 40, 102. He also reported that his hobbies included reading, writing, drawing, surfing the internet, and playing chess and basketball. Tr. 105.

When the Commissioner has properly exercised her discretion and evaluated a plaintiff's credibility, this Court may not reevaluate the evidence and substitute its views for those of the Commissioner. 42 U.S.C. § 405(g); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980). Thus, based on his evaluation of the evidence, this Court finds that the ALJ properly determined that Plaintiff was not fully credible.

**C. The ALJ Appropriately Used Medical-Vocational Rule 201.27 to Determine that Plaintiff was Not Disabled; He Did Not Err by Not Calling a Vocational Expert to Testify.**

Plaintiff contends that the ALJ improperly relied upon Medical-Vocational Rule 201.27 to direct a finding of not disabled, because Plaintiff argues that he has significant nonexertional limitations including pain, difficulty bending, and difficulty concentrating. Pl.'s Mem. at 17-18.

-19-

When a decision cannot be made on medical considerations alone, a claimant can be evaluated under the Medical-Vocational Guidelines (also called the "grid"), found in Title 20 of the Code of Federal Regulations Part 404, Subpart P, Appendix 2.  Claimants with severe exertional impairments (like scoliosis and foot deformity, as in this case) who can no longer perform past relevant work are plugged into grid categories according to their RFC, age, education, and work experience.  The grid dictates a conclusion of "disabled" or "not disabled."  20 C.F.R. 404.1569; See 20 C.F.R. 416.969 for SSI.  The ALJ must make specific findings with regard to the claimant's characteristics in each category; each finding must be supported by substantial evidence.  See, e.g., Wages v. Secretary of HHS, 755 F.2d 495, 497 (6th Cir. 1981).

Here, the ALJ found that Plaintiff: (1) had the RFC to perform a full range of sedentary work; (2) was classified as a "younger individual" (age 23); (3) had a high school education; and (4) could not perform any past relevant work, thus transferability of job skills was not an issue.  Tr. 20-24.  The ALJ did not find that Plaintiff had any nonexertional limitations.  Based on the ALJ's findings, he used Medical-Vocational Rule 201.27 to conclude that Plaintiff was not disabled.  The ALJ did not call a Vocational Expert ("VE") to testify.

When the grid applies, the Commissioner need not submit the testimony of a VE to prove the existence of jobs that the claimant

is capable of performing; a major purpose of the grid is to obviate the need for such testimony.  Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981) (noting that in the grid the Social Security Administration "has taken administrative notice of the same sources a [VE] would utilize.").   To establish the availability of suitable alternative jobs, courts have traditionally preferred the procedure of calling a VE to testify at the administrative hearing.  Judicial decisions, however, have stopped short of establishing a per se rule requiring such testimony.  See Decker v. Harris, 647 F.2d 291, 298 (2d Cir. 1981).

If the grid cannot be used (as, for example, when nonexertional impairments are present or when exertional impairments do not fit squarely within grid categories), the testimony of a VE is generally required to support a finding of RFC for substantial gainful activity ("SGA").  See, e.g., Jones v. Bowen, 841 F.2d 849, 851 (8th Cir. 1988).  Although VE testimony may be helpful, it is not always required when nonexertional impairment(s) are present.  "[R]ather, we only require that there be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." Warmoth v. Bowen, 798 F.2d 1109, 1110 (7th Cir. 1986).

As discussed previously, substantial evidence supports the ALJ's RFC determination that Plaintiff can perform the full range

-21-

of sedentary work.   Thus, based on the ALJ's findings, this Court finds that he did not need to call a VE to testify.   Because Plaintiff's RFC, age, education, and work experience matched the description in the grid, and because he found that Plaintiff had no nonexertional limitations, the ALJ appropriately relied on it as a framework for determining that Plaintiff was not disabled.

**CONCLUSION**

For the reasons stated, this Court finds that the Commissioner's denial of SSI benefits to Plaintiff was based on substantial evidence in the record and was not erroneous as a matter of law.   Accordingly, the Commissioner's decision is affirmed.   This Court grants Commissioner's motion for judgment on the pleadings.   Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    July 15, 2013
          Rochester, New York